

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-126-CR

MARTIN ALLYN DERUSHA, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

### MEMORANDUM OPINION[1]

------------

Appellant Martin Allyn Derusha Jr. appeals his conviction for felony driving while intoxicated ("DWI"). We affirm.

Appellant was arrested for DWI and submitted to a blood test. The State's indictment alleged, *inter alia*, that he had been "intoxicated by not having the normal use of his mental and physical faculties by reason of the

---

[1] *See* Tex. R. App. P. 47.4.

introduction of alcohol . . . and by having an alcohol concentration of at least 0.08."[2]

At appellant's trial, officers testified that their observations of and interactions with him on the night of his arrest led them to believe that he had lost the normal use of his physical and mental faculties by drinking alcohol, and therefore, had been intoxicated. Laboratory test results showing that appellant's blood alcohol concentration was over the legal limit were also admitted. After hearing this and other evidence—including evidence of appellant's prior DWI convictions—the jury found appellant guilty and assessed his punishment at three years' confinement. The trial court sentenced him accordingly.

In his sole point on appeal, appellant claims that the evidence is legally insufficient to show that he was intoxicated because his "attack on the blood test undermined the State's case." In support of this claim, he argues that the blood test results showing that his alcohol concentration was two or more times over the legal limit were not reliable or accurate, that the collection of his blood sample was flawed, that the blood testing equipment had not been

---

[2] See Tex. Penal Code Ann. § 49.01(2)(A) & (B) (Vernon 2003).

recently tested or maintained, and that the testing laboratory had not followed established protocol.

The State, however, did not merely allege intoxication by blood alcohol concentration exceeding the legal limit; it also alleged intoxication by loss of mental and physical faculties. Appellant does not challenge the proof supporting these elements of the State's case, including testimony from experienced law enforcement officers that he was intoxicated by having lost the normal use of his mental and physical faculties—evidence that has repeatedly been held sufficient to support a conviction for driving while intoxicated.[3]

The evidence in this case showed that on the night charged in the indictment, Texas Department of Public Safety ("DPS") Trooper Chris Burns was in a marked patrol car facing westbound on the side of Interstate 20, monitoring nighttime traffic coming out of Fort Worth. Around 10:40 p.m., he noticed a Toyota Spyder convertible approaching quickly from behind, moving from lane to lane, and passing other cars in an erratic manner. He clocked the car at 83 miles an hour. The posted speed limit on the interstate was 65 miles

---

[3] *See, e.g., Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (holding that experienced trooper's opinion that a defendant was intoxicated at the time of driving based upon the defendant's slurred speech, swaying, unsteadiness and strong odor of intoxicating beverage is sufficient, standing alone, to establish intoxication in a DWI prosecution); *Martin v. State*, 724 S.W.2d 135, 137 (Tex. App.—Fort Worth 1987, no pet.).

per hour. Trooper Burns followed and activated his emergency lights, stopping the car after a couple of miles.

The weather was clear and cool—the temperature was around 40 degrees. Appellant had been driving with the top down. Trooper Burns noticed that the car's brake lights had remained on after the stop, and he suspected that it was still in "drive" as he approached. Upon reaching the car, he smelled the odor of an alcoholic beverage. He asked appellant to exit. Using the steering wheel and side of the car for balance, appellant pulled himself out.

Trooper Burns asked appellant to move over to the bar ditch, but appellant remained beside his car. Trooper Burns asked again before appellant complied. There was a "strong" odor of alcohol on appellant's "person, about him, [and] on him."

Appellant held a piece of paper and his wallet in his hand. When asked for his license and proof of insurance, he reached into his back pocket as if he had forgotten where his wallet was. He handed the trooper his license and dropped his wallet. He tried to give Trooper Burns some credit cards and unsteadily bent down to retrieve his wallet.

After appellant had produced his license, he kept shoving his hands into his pockets despite the trooper's repeated instructions that he keep his hands visible for officer safety. Trooper Burns had to repeat several of his instructions

4

to appellant during the stop, such as where to move, where to stand, and to keep his distance because he constantly invaded the trooper's "personal space."

Appellant's eyes were red and glassy, his face was flushed, his speech was slurred or "thick tongue[d]," his balance was unsteady, and he could not walk in a straight line. Trooper Burns performed the horizontal gaze nystagmus test ("HGN") and noticed that all six clues of intoxication were present. He had learned in his training that the presence of four clues indicated an 88% probability that the person tested was intoxicated above the legal limit of 0.08.

The trooper attempted to position appellant to perform the walk and turn test. But appellant was unable to attempt the test because he could not hold his balance long enough to get into the starting position, which required that he stand with his right heel touching his left toe and keep his hands down to his sides. Trooper Burns gave appellant multiple opportunities to commence the test, but appellant could not assume the starting position.

Appellant lost his balance several times, "and the last time he lost his balance it was towards traffic." At that point, Trooper Burns moved appellant off the roadway and handcuffed him, arresting him for DWI. Trooper Burns testified that he arrested appellant because in his opinion, appellant did not

5

have the normal use of either his physical or mental faculties due to his "drinking alcohol."

After handcuffing appellant, Trooper Burns started to search appellant's pockets, and appellant "jerked away from" him. He stated that he was a surgeon and that the trooper was not going to do that to him, and then he started swinging his elbows, making contact with the trooper. At that point, Trooper Burns took appellant to the ground to subdue him. Appellant asked, "Do you want to get shitty with me?"

Willow Park Police Officer Doug Garnett was on routine patrol in the area when he noticed Trooper Burns and appellant "going to the ground and the trooper's hat falling off his head." He radioed that the trooper was in a fight and pulled up to assist. Other officers soon arrived, and appellant was placed in the cage in Officer Garnett's patrol car and taken to jail. On the way, Officer Garnett smelled "a pretty moderate odor of alcoholic beverage coming from [appellant]." The officer noticed that appellant's speech was "a little bit slurred," and appellant told him that since he was a "goddamn doctor . . . he was going to have [the officer's] badge. And [the officer] had no idea who [he] was messing with."

At the sally port to the jail, appellant's belligerence necessitated officers' restraining him in a "confinement chair," in which they wheeled him from the

6

patrol car into the jail. Trooper Burns arrived shortly thereafter and took appellant into the Intoxilyzer room. Appellant refused to provide a breath sample but wanted to provide a blood sample instead. Trooper Burns called DPS Sergeant Cody Mitcham to assist in transporting appellant to the local hospital to obtain a blood sample.

Sergeant Mitcham testified that in his opinion, appellant "definitely was intoxicated that night." His eyes were bloodshot, his voice was slurred, and he staggered like an intoxicated person when he walked. Sergeant Mitcham further testified that appellant rambled like an intoxicated person and "volunteered information that wasn't asked like an intoxicated person."

At the hospital, appellant offered to draw his own blood. Trooper Burns watched as a phlebotomist drew a sample of appellant's blood, and he assisted her in sealing the vial and later sent the sample to the DPS lab in Abilene for analysis.

Appellant was returned to the Parker County Jail, and on the way, he said that if he had known that he was going to get arrested, "he would have ran and gave everybody some fun."

We hold that the evidence is legally sufficient to show that appellant was intoxicated by having lost the normal use of his mental and physical faculties.

Accordingly, we overrule appellant's sole point and affirm the trial court's judgment.

PER CURIAM

PANEL:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 20, 2009